UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| VENICE PI, LLC,<br>   Plaintiff,<br> v.<br>SEAN O'LEARY JR., et al.<br>   Defendants. | Civil Action No. 17-cv-988TSZ |
| VENICE PI, LLC,<br>   Plaintiff,<br> v.<br>JONATHAN DUTCZAK, et al.<br>   Defendants. | Civil Action No. 17-cv-990TSZ |
| VENICE PI, LLC,<br>   Plaintiff,<br> v.<br>MARTIN RAWLS, et al.<br>   Defendants. | Civil Action No. 17-cv-991TSZ |
| VENICE PI, LLC,<br>   Plaintiff,<br> v.<br>INA SICOTORSCHI, et al.<br>   Defendants. | Civil Action No. 17-cv-1074TSZ |



| | |
|---|---|
| VENICE PI, LLC,<br>            Plaintiff,<br>    v.<br>GREGORY SCOTT, et al.<br>            Defendants. | Civil Action No. 17-cv-1075TSZ |
| VENICE PI, LLC,<br>            Plaintiff,<br>    v.<br>YELENA TKACHENKO, et al.<br>            Defendants. | Civil Action No. 17-cv-1076TSZ |
| VENICE PI, LLC,<br>            Plaintiff,<br>    v.<br>CELINA POTTER, et al.<br>            Defendants. | Civil Action No. 17-cv-1160TSZ |
| VENICE PI, LLC,<br>            Plaintiff,<br>    v.<br>TONJA LAIBLE, et al.<br>            Defendants. | Civil Action No. 17-cv-1163TSZ |
| VENICE PI, LLC,<br>            Plaintiff,<br>    v.<br>VICTOR TADURAN, et al.<br>            Defendants. | Civil Action No. 17-cv-1164TSZ |
| VENICE PI, LLC,<br>            Plaintiff,<br>    v.<br>JESSE COOPER, et al.<br>            Defendants. | Civil Action No. 17-cv-1211TSZ |

| | |
|---|---|
| VENICE PI, LLC,<br>    Plaintiff,<br>v.<br>JASMINE PATTERSON, et al.<br>    Defendants. | Civil Action No. 17-cv-1219TSZ |
| VENICE PI, LLC,<br>    Plaintiff,<br>v.<br>DAVID MEINERT, et al.<br>    Defendants. | Civil Action No. 17-cv-1403TSZ |

## DECLARATION OF MICHAEL WICKSTROM

Under penalty of perjury, I, MICHAEL WICKSTROM, hereby state as follows:

1. I am Senior Vice President of Royalties for Voltage Pictures, a producer of the motion picture *Once Upon a Time in Venice*. I personally oversee the royalties and licensing of the motion picture *Once Upon a Time in Venice* for Venice PI, LLC and Voltage Pictures.

2. All matters in this declaration are submitted through personal knowledge and belief.

### About *Once Upon a Time in Venice* & Venice PI, LLC

2. Venice PI, LLC is a special purpose entity ("SPE") formed in 2015 to develop and produce the motion picture *Once Upon a Time in Venice* (hereinafter referred to as "Motion Picture"), which was released in 2017. Plaintiff Venice PI, LLC is a California limited liability company with principal offices in Los Angeles, California and an affiliate of Voltage Pictures, a production company with a notable catalog of major award-winning motion pictures. (www.voltagepictures.com).

3. *Once Upon a Time in Venice* is an action comedy movie starring Bruce Willis, John Goodman and Jason Momoa, among others. In the Motion Picture, Bruce Willis plays the character Steve Ford, who is an L.A. based Private Investigator whose professional and personal

worlds collide after his pet dog, Buddy, is stolen by a notorious gang. Steve Ford eventually finds himself doing the gang's bidding in order to retrieve Buddy.

4. The Motion Picture is easily discernible as a professional work as it was created using professional performers, directors, cinematographers, lighting technicians, set designers and editors and with professional-grade cameras, lighting and editing equipment. It has significant value and has been created, produced and lawfully distributed at considerable expense.

### Harms of Piracy

5. As a part of my duties for Voltage Pictures, I oversee the anti-piracy efforts of its affiliated SPE's and the effects on motion pictures produced by Voltage Pictures, including the licensing, royalties and antipiracy efforts of Venice PI, LLC.

6. The impact and harm caused by piracy are difficult to quantify. This is because it requires assumptions to be made about those infringers who would have purchased an authorized copy of a work had an unauthorized copy not been made available on BitTorrent. Although difficult to quantify, it is well known that piracy costs the motion picture industry billions of dollars every year.

7. Although my background was originally in the music industry, I left the music industry because of Napster and the widespread piracy in that industry. There were intense layoffs at Warner, Universal and other companies because profits were being eroded and many of those companies did not have theme parks and other revenue streams to offset the enormous losses caused by piracy.

8. Prior to the last decade or so, the Internet was slower and piracy primarily impacted the music industry because music files were smaller and easier and faster to obtain. At that time, motion pictures digital files were still too large to be easily pirated.

9. Now, with faster Internet speeds and BitTorrent, I am seeing a parallel with the larger motion picture files. We are watching our margins get squeezed as expenses continue to rise, and yet piracy continues to undercut our revenues.

10. Much of the motion picture industry now relies on video on demand for revenue. However, even this revenue stream is greatly impacted by piracy, perhaps even more than the theatrical revenues.

11. Due to piracy, we have seen 30-40% drops in revenues from video on demand.

### Anti-Piracy Efforts

12. Often a title is provided to a distributor with minimum guarantees. But when the title is pirated, many distributors respond with a demand for reduction in the minimum guarantee, or some other assurance that Venice PI, LLC is fighting the piracy, such as the transmission of DMCA notices to Internet Service Providers and, when necessary, commencement of litigation against infringers. Simply put, to support our distributors and our agreements with them, we must fight piracy and we must be proactive.

13. Neither Venice PI, LLC nor Voltage Pictures seek to use the Court system to profit from infringement. Revenues from our licensing and distribution agreements are the dominant driver of Voltage's revenues. As such, our anti-piracy efforts are *not* a revenue model. The main goal of our anti-piracy effort is to provide education about the harmful effects of piracy in the movie industry and to deter copyright infringers. Indeed, we currently send out hundreds of thousands of DMCA notices to infringers before filing suit and prefer to stop piracy outside of litigation.

14. When litigation is necessary, we may decide not to pursue a claim based on specific circumstances. For example, if we learn that a Defendant is on active duty in the military or if the Defendant is facing notable financial hardships, we will take that into consideration when reviewing options for settlement, particularly as relating to costs, fees and damages, in

addition to nonfinancial requirements such as an injunction or agreement not to infringe. This is because our intention is not to cause financial hardship on any Defendant.

15. On the other hand, because there is an economic cost to infringement and the law provides for recovery, where appropriate we pursue settlements what may include reasonable statutory damages as well as reimbursement for some or all of the costs and attorney's fees we have expended in our enforcement effort, as may be allowed by law. Again, whether and the extent that a financial recovery is sought is dependent on a number of factors, such as those described above.

16. Additionally, we have no interest in accepting financial settlements from innocent individuals. To that end, we have instructed our legal team to dismiss cases when provided with credible information that it is not possible to confirm the identification of the responsible party, particularly after there has been a reasonable opportunity for either discovery, as provided by applicable court rules.

17. We want the courts to know that we need the law to be enforced to ensure the survival of our business. It is our hope that by upholding the law, courts will allow all creative people the ability to make a living through the authorized distribution of the works through legitimate channels. To support the creative team, we implemented the policy that any net compensation received from our anti-piracy program flows into the royalty "waterfall" and gets distributed to those who worked on the motion picture. This often includes technicians, general services, actors, directors and others in the same manner as ticket sales or other systems.

18. Contrary to the allegations of defendants in similar actions, we are definitely prepared to take cases to trial, such as the anticipated trial in *Clear Skies Nevada, LLC v. Kainu*, D. Or. 3:16-cv-0811-AC, where we have already prevailed over defense counsel's opposition in a motion for partial summary judgment on liability and willfulness.

19. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: November 27, 2017.

_____
Michael Wickstrom